IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02717-PAB-MJW

JAMES L. NERO, individually and on behalf of a class of others similarly situated,

      Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

      Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Motion for Attorneys' Fees Pursuant to

C.R.S. § 13-17-201 [Docket No. 91] filed by defendant American Family Mutual

Insurance Company.  The Court has subject matter jurisdiction pursuant to 28 U.S.C.

§ 1332.

## I.  BACKGROUND

On February 15, 2011, plaintiff James L. Nero filed this putative class action

against defendant in the District Court for the Northern District of Illinois.  *See* Docket

No. 2.  In his original complaint, plaintiff brought claims on behalf of the class against

defendant for breach of contract, fraudulent concealment, negligent misrepresentation,

bad faith breach of contract, and violations of the Colorado Consumer Protection Act

("CCPA"), Colo. Rev. Stat. § 6-1-101 *et seq*.  Docket No. 2 at 6-10.  The class claims

were based on defendant's alleged failure to provide Personal Injury Protection ("PIP")

benefits for insurance policies sold in Colorado as required by the Colorado Auto

Accident Reparations Act ("CAARA"), Colo. Rev. Stat. § 10-4-701 *et seq.* (repealed by

Laws 1997, H.B. 97-1209, § 8, eff. July 1, 2003).  *Id*. at 2-5.  Plaintiff sought to

represent a putative class consisting of:

> All persons who paid premiums to American Family Mutual Insurance
> Company or American Standard Insurance Company of Wisconsin for
> UM/UIM coverage covering a vehicle during the period from September
> 16, 1999 to the present, and who were denied coverage for claims arising
> out of or related to personal injury protection or extended personal injury
> protection coverage, or expenses that may be reimbursed under
> personal injury protection or extended personal injury protection coverage,
> excluding defendants and their employees, officers, directors, and agents.

*Id*. at 4.  On October 19, 2011, the District Court for the Northern District of Illinois

transferred the case to this Court pursuant to 28 U.S.C. § 1404(a).  *See* Docket No. 1.

On January 3, 2012, plaintiff filed a Corrected Second Amended Complaint [Docket No.

19], raising identical putative class action claims against defendant.[1]  Docket No. 19 at

16-24.  In the Corrected Second Amended Complaint, plaintiff also raised individual

claims against defendant for breach of contract, bad faith delay or denial of insurance

benefits in violation of Colo. Rev. Stat. § 10-3-1115, common law bad faith breach of

insurance contract, and violations of the CCPA.  *Id*. at 24-29.  On January 17, 2012,

---

[1]In the second corrected amended complaint, the putative class consisted of:

> All persons who presented claims to American Family Mutual Insurance
> Company for basic PIP coverage and/or enhanced PIP coverage,
> covering a vehicle during the period from January 1, 2001 through July 1,
> 2003, and whose benefits were not paid within 45 days of presenting
> "Reasonable proof of the fact" and "amount of the expenses incurred" for
> covered lost wage, medical and/or rehabilitative benefits and where
> American Family Mutual Insurance Company did not timely provide the
> requisite forms and/or notice pursuant to Colorado Department of
> Insurance regulation 5-2-8.

Docket No. 19 at 10.

defendant moved to dismiss plaintiff's complaint.   Docket No. 20.   On September 28,

2012, the Court granted defendant's motion and dismissed plaintiff's individual claims

for failure to state claims pursuant to Fed. R. Civ. P. 12(b)(6).   *See* Docket No. 88.

Because plaintiff could not sustain his own claims, the Court also dismissed the claims

plaintiff brought on behalf of the putative class.   Docket No. 88 at 6.

In the present motion, defendant seeks an award of $52,258.00 in attorneys'

fees pursuant to Colo. Rev. Stat. § 13-17-201, which awards attorneys' fees to a

defendant who secures pretrial dismissal of all tort claims through a motion brought

under Colo. R. Civ. P. 12(b).   Docket No. 91 at 7.   Defendant states that it incurred

$52,258.00 in attorneys' fees for the work performed by its attorneys to secure the

dismissal of plaintiff's tort claims.   Plaintiff opposes defendant's motion, arguing that the

Court should not grant defendant an award of attorneys' fees for two reasons: first,

Colorado substantive law does not apply in this case; and, second, even if Colorado law

applies, defendant is not entitled to attorneys' fees because plaintiff's claims are based

on defendant's breach of contract, and not due to the commission of a tort.   Docket No.

98 at 3-5.   In the alternative, plaintiff requests that, should defendant receive an award

of attorneys' fees, the Court reduce defendant's award because the requested amount

is unreasonable.   *Id*. at 10-14.

## II.  ANALYSIS

### A.  Choice of Law

Plaintiff asserts that the issues in this case are governed by the law of Illinois,

Docket No. 98 at 3, and that, because defendant cannot recover attorneys' fees under

Illinois law, the Court should deny defendant's motion. *Id.* In response, defendant

asserts that the substantive law of Colorado applies to the facts of this case because

Colorado is the state with the most significant contacts. Docket No. 99 at 2-3.

Generally, a federal court sitting in diversity applies the forum state's choice of

law principles. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th

Cir. 1996). However, where a case is transferred from one forum to another under 28

U.S.C. § 1404(a), the transferee court must follow the choice of law rules of the state in

which the transferor court sits. *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1219 (10th

Cir. 1997). Because the case was transferred to this district from the Northern District

of Illinois, the Court must apply the choice of law rules of the State of Illinois.

Under Illinois law, a choice of law analysis is required only when it will affect the

outcome of the case. *Townsend v. Sears, Roebuck & Co.*, 879 N.E. 2d 893, 898 (Ill.

2007). In the present case, the parties agree that a conflict exists between Illinois and

Colorado law with regard to the request for attorneys' fees. Docket No. 98 at 5; Docket

No. 99 at 1-4. Specifically, the parties agree that Illinois does not have a statute which

provides defendant with attorneys' fees based on the dismissal of plaintiff's tort claims.

Because the parties agree that there is a conflict, the Court finds that a resolution of the

choice of law issue here will have an impact on the outcome of the attorneys' fees

request.[2]

---

[2]The Court notes that there may be other conflicts with plaintiff's claims, such as
the fact that Illinois law may not provide a cause of action in tort for a bad faith breach
of insurance contract. *See Cramer v. Ins. Exch. Agency*, 675 N.E. 2d 897, 904 (Ill.
1996) (noting that an insurer's conduct may give rise to both a breach of contract action
and a separate independent tort action, but mere "allegations of bad faith or
unreasonable and vexatious conduct, without more, however, do not constitute such a

In their briefs, both parties cite cases discussing Illinois choice of law rules

governing the interpretation of insurance contracts that do not have choice of law

provisions.  *See Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E. 2d

842, 845 (Ill. 1995); *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 872 (7th

Cir. 2000) (applying Illinois law); *Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust*, 723

N.E. 2d 687, 694 (Ill. App. Ct. 1999); *CitiMortgage, Inc. v. Absolute Title Servs., Inc.*,

2012 WL 1108249, at *4 n.5 (N.D. Ill. April 2, 2012) (applying Illinois law).  According to

these cases, when an insurance contract lacks a choice of law provision, construction

of an insurance contract will be "governed by the location of the subject matter, the

place of delivery of the contract, the domicile of the insured or of the insurer, the place

of the last act to give rise to a valid contract, the place of performance, or other place

bearing a rational relationship to the general contract."  *Lapham-Hickey*, 655 N.E. 2d at

845.  However, because Colo. Rev. Stat. § 13-17-201 awards attorneys' fees only in

connection with the dismissal of tort claims, the Court finds that the *Lapham* test does

not govern the choice of law issue here.  Because plaintiff's class claims alleging

fraudulent concealment, negligent misrepresentation, and bad faith, as well as plaintiff's

individual claims for statutory bad faith breach of insurance contract, common law bad

faith, and violations of the CCPA, are all tort claims, the Court must next determine

which law applies to tort claims that do not "arise under the provisions" of the insurance

_____

tort").  In addition, the CCPA requires that a defendant's deceptive practice "significantly
impact[ ] the public," *see Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
62 P.3d 142, 147 (Colo. 2003), while the Illinois Consumer Fraud and Deceptive
Business Practices Act, 815 Ill. Comp. Stat. 505/2, does not.  *See Connick v. Suzuki
Motor Co.*, 675 N.E.2d 584, 593-94 (Ill. 1996).

contract.  *Barron v. Kane & Roach, Inc.*, 398 N.E. 2d 244, 246 (Ill. App. Ct. 1979);

*Travis v. Harris Corp.*, 565 F.2d 443, 446 (7th Cir. 1977) (applying Indiana law)

("though the contract may be interpreted under Ohio law, . . . the questions of traditional

tort law are to be determined in accord with the laws of Indiana, the situs of the injury

and domicile of [plaintiff]").

Neither the Illinois Supreme Court nor the Seventh Circuit – interpreting Illinois

law – has addressed the question of which law applies to tort claims arising out of an

insurance contract without a choice of law provision.  *See Cunningham Charter Corp. v.*

*Learjet, Inc.*, 870 F. Supp. 2d 571, 575 (S.D. Ill. 2012).  The Seventh Circuit has noted,

relying on decisions from other circuits, that district courts sitting in diversity should not

apply contractual choice of law clauses to tort claims unless it is clear that the parties

intended that the contractual choice of law clause apply to tort claims.  *See Kuehn v.*

*Childrens Hosp., Los Angeles*, 119 F.3d 1296, 1302 (7th Cir. 1997) (applying Wisconsin

law) ("One can, it is true, find cases that say that contractual choice of law provisions

govern only contractual disputes and not torts . . . But what the cases actually hold is

that such a provision will not be construed to govern tort as well as contract disputes

unless it is clear that this is what the parties intended") (citation omitted); *CERAbio LLC*

*v. Wright Med. Tech., Inc.*, 410 F.3d 981, 987 (7th Cir. 2005) (applying Wisconsin law).

In addition, numerous Illinois federal district courts, without citing to a decision from the

Illinois Supreme Court or the Seventh Circuit interpreting Illinois law, have held that a

contract's choice of law provision will apply to tort claims if: (1) the choice of law

provision indicates that the parties intended Illinois law to govern non-contract claims;

6

and/or (2) the plaintiff's tort claims are "dependent" upon the contract.  *See Medline*

*Indus. Inc. v. Maersk Medical Ltd.,* 230 F. Supp. 2d 857, 862 (N.D. Ill. 2002);

*Cunningham Charter Corp.*, 870 F. Supp. 2d at 576 (listing cases).  These cases find

that a tort claim is dependent upon a contract if: (1) the claim alleges a wrong based on

the construction and interpretation of the contract; (2) the tort claim is closely related to

the parties' contractual relationship; or (3) the tort claim could not exist without the

contract.  *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 955 (N.D. Ill. 2006).

Because the insurance contract here does not have a choice of law provision,

there is no indication that the parties intended a specific law to apply to any contract or

tort claims arising from the contract.  *See Kuehn*, 119 F.3d at 1302.  Accordingly,

because there is no contractual choice of law provision and this motions pertains only to

plaintiff's tort claims, the Court finds that Illinois tort choice of law rules apply to this

motion.  *Diamond State Ins. Co. v. Chester-Jensen Co., Inc.*, 611 N.E. 2d 1083, 1093

(Ill. App. 1993) (noting that, in the absence of contractual choice of law provision, the

general choice of law rules of Illinois should control); *see, e.g., Tradesmen Int'l, Inc. v.

Black*, 2011 WL 5330589, at *4 (C.D. Ill. Nov. 7, 2011) (applying Illinois law and finding

that tort claims were not governed by the contract's choice of law provision because the

provision did not mention tort claims).

In tort cases, Illinois uses the "most significant relationship" test articulated in the

Restatement (Second) of the Conflict of Laws §§ 6, 145 (1971) (the "Restatement").[3]

---

[3]Colorado courts also apply the "most significant relationship" test articulated in
the Restatement (Second) of the Conflict of Laws §§ 6, 145 (1971).  *See AE, Inc. v.
Goodyear Tire & Rubber Co.*, 168 P.3d 507, 508 (Colo. 2007).

*See Townsend*, 879 N.E. 2d at 900.  The cornerstone of the most significant relationship test is to "apply the law of the state that, with regard to the particular issue, has the most significant relationship with the parties and the dispute."  *Burlington N. & Santa Fe Ry. Co. v. ABC-NACO*, 906 N.E. 2d 83, 91 (Ill. App. Ct. 2009) (citation omitted).  The Second Restatement "contemplates a two-step process in which the court (1) chooses a presumptively applicable law under the appropriate jurisdiction-selecting rule, and (2) tests this choice against the principles of § 6 in light of relevant contacts identified by general provisions like § 145 (torts)."  *Townsend*, 879 N.E. 2d at 903 (citation omitted).  Under Illinois law, for personal injury actions, "the law of the place of injury controls unless another state has a more significant relationship with the occurrence and with the parties with respect to the particular issue."  *Id.* (citation omitted); Restatement (Second) of Conflict of Laws § 146 (1971).  As such, "Section 146 is the starting point for any choice-of-law analysis in personal injury claims."  *Townsend*, 879 N.E. 2d at 903.

The Court finds, however, that § 146 does not apply here because none of plaintiff's tort claims are personal injury torts.  Specifically, plaintiff's claims for bad faith, fraudulent concealment, negligent misrepresentation, and unfair claims practices are not claims of "physical harm or mental disturbance, such as fright and shock, resulting from physical harm or from threatened physical harm or other injury to oneself or to another."  Restatement (Second) of Conflicts of Law § 146 cmt. b.  *See, e.g., Simmons v. Campion*, 991 N.E. 2d 924, at 932 (Ill. App. Ct. 2013) (describing elements of fraudulent concealment); *Doe v. Dilling*, 888 N.E. 2d 24, 36 (2008) (noting that

negligent misrepresentation is purely an economic tort).  Because plaintiff's torts are

economic torts, the Court finds that the choice of law analysis should begin with § 145

and § 6 of the Restatement.  *See Burlington*, 906 N.E. 2d at 92 (applying § 147 to a tort

case because the plaintiff did not suffer personal injuries but there were injuries to

"tangible things").

Section 145 (2) lists general principles applicable to all torts and provides that

courts should take into account the following contacts to determine the applicable law:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) § 145(2); *Esser v. McIntyre*, 661 N.E. 2d 1138, 1141 (Ill. 1996).

Generally, in a tort case, the two most important contacts are the place where the injury

occurred and the place where the conduct causing the injury occurred.  *Fed. Ins. Co. v.*

*J.K. Mfg. Co.*, --- F. Supp. 2d ----, 2013 WL 1248635, at *8 (N.D. Ill. March 28, 2013)

(applying Illinois law).  Furthermore, Illinois law requires that courts analyze the § 145

contacts in light of the principles listed in § 6 of the Restatement:

(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Law § 6; *Burlington*, 906 N.E. 2d at 91-92.

9

With regard to the first § 145 contact, although Illinois is the place of the personal injury from which plaintiff's contract claims against defendant arise, the injury for which plaintiff seeks relief through his tort claims is the alleged mishandling of his insurance claim. *See* Docket No. 19 at 24-28.  Thus, the relevant location of plaintiff's injury is where plaintiff was domiciled at the time his claims was denied, and not where the car accident occurred.  Based on the evidence submitted by the parties, plaintiff lived in Illinois for ten years prior to 2000, Docket No. 99-2 at 5 (Nero Dep. 11:5-25), moved to Colorado from 2000 until September 2003, Docket No. 99-2 at 4-5 (Nero Dep. 10:22-11:7), and then moved to Wisconsin, where he currently resides.  Docket No. 98-1 at 4 (Nero Dep. 9:17-10:5).  Although there is some evidence suggesting that plaintiff spent time in Illinois between October 2002 and September 2003, there is no indication that he filed his insurance claim with defendant while residing in Illinois.  Accordingly, the most relevant location of plaintiff's injury (i.e., the place he was domiciled when defendant denied his insurance claim) is likely Wisconsin, which favors neither Colorado nor Illinois law.  However, the Court finds that consideration of plaintiff's class action tort claims tips this factor in favor of applying Colorado law because a large portion of the class were likely domiciled in Colorado during the relevant period.  *See* Docket No. 19 at 5, ¶ 15 (noting that CAARA applied only to policies issued "in the State of Colorado").  Moreover, the conduct giving rise to the class claims – fraudulent concealment and negligent misrepresentation – is conduct typically associated with

contract formation, which likely occurred in Colorado for the majority of the class.[4]  *Id*.

Thus, the first contact weighs in favor of applying Colorado law.

With regard to the second § 145 contact, plaintiff does not deny that he

purchased his insurance policy from one of defendant's Colorado agents, Docket No.

19-2 at 5, and that his insurance claim was handled by Colorado agents.  It is also likely

that the conduct causing the injury to the class occurred in Colorado based either on

the mismanagement of insurance claims or misrepresentations made by defendant's

Colorado agents.  Moreover, although plaintiff argues that he discovered that

defendant's PIP decisions were made at defendant's headquarters in Wisconsin,

Docket No. 98 at 5, this fact does not support the application of Illinois law.

Accordingly, the second § 145 contact also weighs in favor of applying Colorado law.

As to the third § 145 contact, it is undisputed that plaintiff is currently domiciled in

Wisconsin and defendant is incorporated in Wisconsin.  However, the majority of the

class members are likely domiciled in Colorado.  Thus, the third contact also weighs in

favor of applying Colorado law.  Finally, the parties' relationship is centered in Colorado.

Plaintiff applied for, negotiated, and entered into the insurance contract in Colorado,

plaintiff's insurance agent, Daniel B. Richmond, was located in Colorado, and

defendant's Colorado agents handled plaintiff's insurance claim.  Docket No. 19-2 at 5.

These facts are likely similar for the rest of the class.  Accordingly, the fourth contact

---

[4]In his complaint, plaintiff alleges that defendant "concealed material" facts when
it sold insurance policies to class members in order to induce the class members into
purchasing its insurance policies.  Docket No. 19 at 17-19, ¶¶ 60-61, 71-74.  In addition,
plaintiff claims that defendant negligently failed to communicate information about PIP
coverage to class members by using standard insurance forms.  *Id*. at 20-21, ¶¶ 78-83.

11

also favors applying Colorado law.  Therefore, all four of the contacts listed in § 145(2) suggest that Colorado has the most significant relationship to plaintiff's tort claims.

As noted above, the § 145 contacts inform the § 6 analysis.  With regard to the first § 6 principle, at its core, plaintiff's tort claims alleged that defendant made fraudulent or negligent misrepresentations, negligently handled insurance claims, and employed deceptive trade practices in connection with the sale of insurance policies in Colorado to a putative class of predominantly Colorado consumers.  Given these facts, the needs of the interstate and international systems are undisputably best satisfied by applying Colorado law.  Second, because the injury at issue here is not plaintiff's accident, but rather defendant's alleged mishandling of plaintiff's insurance claim and those of the class, which occurred in Colorado, the Court finds that Colorado's interests are great.  Third, Colorado has a significant interest in resolving tort claims and unfair practices claims, which occurred in Colorado with a company licensed to do business in Colorado and arising out of contracts executed in Colorado.  Fourth, having negotiated and executed the insurance contract in Colorado, the parties may have justifiably expected that Colorado law would govern disputes relating to extra-contractual factors, such as misrepresentation or concealment.  Fifth, although Illinois law is arguably more favorable to plaintiff in that plaintiff would not have to provide for defendant's attorneys' fees, both bodies of law impose duties and provide protections for parties to an insurance contract.  Sixth, applying Colorado law to extra-contractual issues arising out of a contract executed in Colorado enhances certainty, predictability, and uniformity of result for contracting parties in Colorado.  Seventh, it is self-evident that while use of

Illinois law may not be difficult, the use of Colorado law here also does not present any difficulty.

Accordingly, the Court finds that, had plaintiff's tort claims been litigated on the merits, the rights and liabilities of the parties would have been determined by Colorado law because Colorado has the most significant relationship to the dispute between the parties. *Burlington*, 906 N.E. 2d at 93. Because Colorado law applies to plaintiff's tort claims, the Court will now consider whether defendant is entitled to an award of attorneys' fees pursuant to Colo. Rev. Stat. § 13-17-201.

### B.  Colo. Rev. Stat. § 13-17-201

Plaintiff claims that Colo. Rev. Stat. § 13-17-201 does not apply here because his claims are based primarily on defendant's breach of contract, and not defendant's tortious acts. Docket No. 98 at 6. In addition, plaintiff argues that § 13-17-201 does not apply because his claims are not based on a death or injury to a person. *Id*.

Section 13-17-201 provides that a defendant may have all of "his reasonable attorney fees in defending" an action when "all actions brought as a result of . . . injury to person . . . where any such action is dismissed on motion of the defendant . . . under rule 12(b) of the Colorado rules of civil procedure." Colo. Rev. Civ. § 13-17-201. The Colorado General Assembly enacted § 13-17-201 to "discourage unnecessary litigation of tort claims," and it applies not only to tort actions involving death or injury to person or property, but also to tort actions involving mere economic injury. *Houdek v. Mobil Oil Corp*., 879 P.2d 417, 424 (Colo. App. 1994). The Tenth Circuit has held that, when exercising diversity jurisdiction, federal courts should apply § 13-17-201 when Colorado

13

state law tort claims are dismissed under Fed. R. Civ. P. 12(b) because federal courts "must apply the substantive law of the forum state" and attorney fee statutes are considered substantive for diversity purposes.  *See, e.g., Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000).

Under § 13-17-201, when an action is brought that contains a mix of tort and contract claims, courts may award attorneys' fees "if the action is primarily a tort action." *U.S. Fax Law Center, Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 517-18 (Colo. App. 2009).  In addition, when § 13-17-201 applies, an award of attorneys' fees thereunder is mandatory.  *Crandall v. City & Cnty. of Denver*, 238 P.3d 659, 663-64 (Colo. 2010).  To determine whether § 13-17-201 applies, district courts focus on the manner in which the plaintiff's claims are pled.  *Dubray v. Intertribal Bison Co-op.*, 192 P.3d 604, 607 (Colo. App. 2008).

In this case, with regard to the class claims, plaintiff brought one breach of contract claim and four tort claims against defendant.  Docket No. 19 at 16-24.  As to his individual claims, plaintiff asserted one breach of contract claim, two statutory tort claims, and one common law tort claim.  *Id*. at 24-29.  Moreover, plaintiff added those tort claims to obtain relief beyond what was available solely under a breach of contract theory.  *Id*. at 29, ¶ C; *see Dubray*, 192 P.3d at 607.  The Court finds that § 13-17-201 applies to the facts of this case because plaintiff's claims are predominantly based in tort.  *Crow v. Penrose-St. Francis Healthcare Sys.*, 262 P.3d 991, 997 (Colo. App. 2011) (upholding an award of attorneys' fees pursuant to Colo. Rev. Stat. § 13-17-201 where plaintiff brought four contract claims and four tort claims, because district court

found the case was primarily based in tort); *Dubray*, 192 P.3d at 606 (upholding award of attorneys' fees under Colo. Rev. Stat. § 13-17-201 where plaintiff brought two contract claims and eight tort claims all arising out of his employment contract).  In addition, the Court finds that § 13-17-201 applies in this case because the statute has been applied to claims arising out of torts based on purely economic injury.  *See Houdek*, 879 P.2d at 424 ("[the court is] not persuaded that the statute is limited in applicability to a 'species' of tort claims and is inapplicable to a tort claim which alleges only economic injury").

To the extent plaintiff argues that requiring him to pay an award of attorneys' fees for claims brought on behalf of a class is unfair, the Court has no discretion to deny attorneys' fees in this case because, once it has been shown that § 13-17-201 applies, the award of attorneys' fees is mandatory.  *See Crandall*, 238 P.3d at 663 (upholding attorneys' fees award to the City and County of Denver against plaintiffs seeking to represent a class); *Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, 335 F. App'x 707, 715 (10th Cir. 2009).  Moreover, the Court cannot apportion the attorneys' fees between plaintiff's class claims and his non-class claims because defendant would have incurred the same fees in any event since the entire action was dismissed for the same reason – plaintiff's failure to plead his own causes of action. *Dubray*, 192 P.3d at 607.  Accordingly, because the Court finds that defendant is entitled to attorneys' fees pursuant to § 13-17-201, the Court will now address plaintiff's objections to the reasonableness of defendant's requested fees.

### C.   Attorneys' Fees Award

Defendant seeks an award of $52,258.00 in attorneys' fees for the work its attorneys performed in this case. Docket No. 91 at 5. Defendant states that it seeks only those attorneys' fees incurred for work related to reviewing plaintiff's original complaint, Docket No. 2, amended complaint, Docket No. 3, and the corrected second amended complaint, Docket No. 19, as well as fees incurred for work related to drafting motions to dismiss each complaint. Docket No. 91 at 5-6. In addition, defendant seeks attorneys' fees incurred in responding to plaintiff's motion to "overrule" a footnote in defendant's motion to dismiss concerning the statute of limitations. Docket No. 27.

To determine the reasonableness of a fee request, a court must begin by calculating the "lodestar amount," which represents the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587-88 (Colo. App. 2000). The lodestar amount may be adjusted based upon several factors, including the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, and the degree of success achieved. *See Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143, 147 (Colo. App. 1996). A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

### 1. Hourly Rate

Defendant requests attorneys' fees based on the compensation of its attorneys at an hourly rate of $395.00-$420.00 for Daniel D. Williams, $615.00-$630.00 for

Michael S. McCarthy, $370.00 for Jeffrey S. Roberts, $310.00 for Christopher J.L.

Diedrich, and $240.00 for Gordon M. Hadfield.  Docket No. 91-1 at 1-2.  Defendant

claims that these hourly rates are reasonable for attorneys of similar skill and

experience in the relevant community.  *Id*. at 2, ¶ 3.  In addition, defendant states that

these are the "standard hourly billing rates" it charges for its attorneys.  *Id*. at 1, ¶ 2.

Plaintiff argues that defendant's requested hours are unreasonable, but does not

present specific objections to the requested rates.  Docket No. 98 at 10.

A "reasonable rate" is defined as the prevailing market rate in the relevant

community for an attorney of similar experience.  *Guides, Ltd. v. Yarmouth Group Prop.*

*Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002).  The party requesting fees bears

"the burden of showing that the requested rates are in line with those prevailing in the

community."  *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998).  In

order to satisfy its burden, plaintiff must produce "satisfactory evidence – in addition to

the attorney's own affidavits – that the requested rates are in line with those prevailing

in the community for similar services by lawyers of reasonably comparable skill,

experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984).

Defendant argues that the rates its attorneys charge are reasonable because

they are the attorneys' normal billing rates.  Docket No. 99 at 6.  The fact that

defendant's attorneys regularly charge the aforementioned rates is relevant to the

reasonableness of the rates, but not dispositive.  *See Lucero v. City of Trinidad*, 815

F.2d 1384, 1385 (10th Cir. 1987) (prevailing rates at the firm seeking fees are "relevant

but not conclusive in determining a reasonable rate").  Defendant has not submitted

evidence that the rate charged by Mr. McCarthy is consistent with the rates charged by other attorneys with similar experience in the Denver area.  *See Jane*, 61 F.3d at 1510 (noting that "the fee rates of the local area should be applied"); *Farmers Co-op Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 500 (8th Cir. 2009) (noting that "[t]he 'relevant community' for determining hourly rates is the place where the case was tried," and not the place from which it was transferred).  Accordingly, because defendant has not provided any evidence in support of Mr. McCarthy's proposed rate, the Court will adjust Mr. McCarthy's rate based on its own familiarity of the range of prevailing rates in the Denver market.  *See generally Guides, Ltd. v. Yarmouth Group Property Mgmt., Inc.*, 295 F.3d 1065, 1079 (10th Cir. 2002) ("where a district court does not have before it adequate evidence of prevailing market rates, the court may use other relevant factors, including its own knowledge, to establish the rate").  Although Mr. McCarthy has over 35 years of experience litigating complex commercial litigation, the Court finds that a reasonable rate for a lead attorney in a case such as this, which requires knowledge of commercial litigation and class action claims, is $500.00.  *See, e.g., MemoryTen, Inc. v. LV Admin. Servs., Inc.*, No. 12-cv-00993-WJM-BNB, 2013 WL 1154492, at *3 (D. Colo. March 19, 2013) (finding that $465-$495 is a reasonable hourly rate for an attorney with over 25 years of experience in complex commercial litigation, business torts, and securities fraud); *Jankovic v. Exelis, Inc.*, No. 12-cv-01430-WJM-KMT, 2013 WL 1675936, at *4 (D. Colo. April 17, 2013) (finding that $430.00 was a reasonable rate for an attorney with more than 35 years of experience in employment and labor law); *Nova Leasing, LLC v. Sun River Energy, Inc.*, No. 11-cv-00689-CMA-BNB, 2013

WL 1302265, at *3 (D. Colo. March 28, 2013) (noting that $450.00 is a reasonable hourly rate for an attorney with over 23 years of experience in business litigation and securities fraud cases); *Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA) Inc.*, --- F. Supp. 2d ----, No. 08-cv-02750-MSK-KMT, 2013 WL 3810861, at *15 (D. Colo. July 23, 2013) (finding that $450 is a reasonable hourly rate for a lead attorney).  The Court finds that the fees requested by defendant's remaining attorneys are consistent with rates charged by other similarly situated attorneys in the Denver area.  *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1259 (10th Cir. 2005).

### 2.  Number of Hours

In support of its attorneys' fees motion, defendant attached a copy of itemized billing records from Faegre Baker Daniels, LLP ("Faegre Baker").  Docket No. 91-1. Defendant also submitted the declaration of Daniel D. Williams, an attorney for Faegre Baker, who acted as co-lead attorney in this case, in which Mr. Williams provides an analysis of Faegre Baker's billing entries.  *Id*.  Mr. Williams states that the five attorneys assigned to this case worked a total of 123.1 hours between 2011 and March 2, 2012. *Id*. at 2, ¶ 5.  Mr. Williams also states that, from the total it billed defendant, Faegre Baker voluntarily omitted fees charged in connection with certain discovery matters, the successful motion to transfer the case to this District, and a fully briefed motion for summary judgment.  *Id*. at ¶ 6.

Plaintiff raises five arguments in his response.  First, plaintiff argues that Faegre Baker's use of block billing precludes the Court from determining how much time defendant's attorneys actually spent on a specific task.  Docket No. 98 at 10-11.

Second, plaintiff objects to defendant's billing entries for the period between February 23, 2011 and June 27, 2011, arguing that defendant voluntarily waived reimbursement for these fees since they reflect billing entries before the case was transferred to this District.  *Id*. at 11-12.  Third, plaintiff argues that certain billing entries reflect attorney time spent on the issues of *res judicata* and claim preclusion, which plaintiff contends defendant did not raise in its motion to dismiss.  *Id*. at 12.  Fourth, plaintiff asserts that defendant should not receive an award of attorneys' fees for work performed before November 21, 2011 because defendant's attorneys did not perform work on the successful motion to dismiss before that date.  *Id*. at 13.  Finally, plaintiff argues that some of defendant's billing entries are duplicative because Faegre Baker used different attorneys to draft and review the same motion.  *Id*. at 13-14.

To determine the reasonableness of the hours expended, a court considers several factors.  First, it considers whether the fees pertain to tasks that would ordinally be billed to a client.  *See Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds by Penn. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 717 n. 4 (1987).  Plaintiff must also demonstrate that its counsel used "billing judgment" in winnowing down the hours actually spent to those reasonably expended.  *Praseuth*, 406 F.3d at 1257; *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan*., 157 F.3d 1243, 1250 (10th Cir. 1998).  "In determining what is a reasonable time in which to perform a given task," an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other

side; and (4) "the potential duplication of services" caused by the presence of multiple attorneys when one would suffice. *Ramos*, 713 F.2d at 554.

With regard to plaintiff's first objection, block billing consists of attorneys recording large blocks of time for tasks without separating the tasks into individual blocks or elaborating on the amount of time each task took. *Payan v. Nash Finch Co.*, --- P.3d ----, 2012 WL 3517836, at *4 (Colo. App. Aug. 16, 2012). Colorado law does not require counsel to use a particular type of billing format, nor does it prohibit block billing. *Crow*, 262 P.3d at 1000. However, a trial court retains discretion to reduce the hours billed based on block billing if the court is unable to determine whether the amount of time spent on various tasks was reasonable. *Id.*; *Flying J Inc. v. Comdata Network, Inc.*, 322 F. App'x 610, 617 (10th Cir. 2009). The Court finds that defendant's use of block billing was reasonable in this case and does not impede the Court's ability to review defendant's billing entries. For example, plaintiff specifically objects to Mr. Hadfield's billing entry recording 4.6 hours of time for several tasks including, but not limited to, researching the statute of limitations issue, Colorado's no-fault act, and analyzing the accrual dates for plaintiff's claims. *See* Docket No. 91-1 at 6. The Court finds that, for this particular entry, Mr. Hadfield's billing entry reasonably represents time spent on the aforementioned tasks. *Jane*, 61 F.3d at 1510. In addition, the Court also rejects plaintiff's remaining objections to the billing entries identified in Docket No. 98-2, because the Court finds that the Faegre Baker's use of so-called block billing was generally reasonable.

With regard to defendant's billing entries between February 23, 2011 and June 27, 2011, a review of the challenged entries shows that this attorney time was spent preparing motions to dismiss plaintiff's Amended Complaint, Docket No. 3, and not the motion to transfer the case to this District.  *See* Docket No. 91-1 at 4-6.  Thus, although these time entries reflect work defendant's attorneys performed before the case was transferred, the actual time entries are compensable because they relate to work defendant's attorneys performed to secure dismissal of this case.  *Jane*, 61 F.3d at 1510.

Next, plaintiff claims that defendant should not receive an award of fees for time spent researching the *res judicata* issue and the claim preclusion issue because defendant did not use this defense in its motion to dismiss.  Docket No. 98 at 12.  A review of defendant's motion to dismiss shows that defendant raised the claim preclusion issue in its motion to dismiss.  *See* Docket No. 20 at 2-3.  Thus, the Court will overrule plaintiff's objection to defendant's billing entries on this basis.  *Jane*, 61 F.3d at 1510.

As to plaintiff's objection that defendant should not receive an award for work performed to draft a motion to dismiss the amended complaint, Docket No. 3, the Court is not persuaded.  Although plaintiff made substantial changes between his amended complaint and his corrected second amended complaint, Docket No. 19, such as including his individual claims against defendant, the core issues presented in both complaints remained essentially the same.  Thus, the work defendant's attorneys performed while drafting a motion to dismiss the amended complaint was useful in drafting the motion to dismiss the corrected second amended complaint.  Accordingly,

the Court finds that defendant is entitled to recover attorneys' fees for time spent on all of its motions to dismiss. *Jane*, 61 F.3d at 1510.

Finally, plaintiff argues that some of defendant's billing entries are duplicative. Docket No. 98 at 13-14; Docket Nos. 98-3, 98-4. Specifically, plaintiff contends that defendant's use of three different attorneys to review the same motion to dismiss is unreasonable. *See, e.g.,* Docket No. 91-1 at 12-13. The Court agrees that some of defendant's billing entries are duplicative. *Ramos*, 713 F.2d at 554. Accordingly, the Court will reduce defendant's attorney hours by 1.8 hours for a total number of hours of 121.30 hours.

### 3. Lodestar Amount

Based on the foregoing, the lodestar figure for defendant's fee request is $48,563.50.[5] The Court finds that this fee award is reasonable given the issues presented in this case. *Blum*, 465 U.S. at 893-94.

## III.  CONCLUSION

Accordingly, it is

**ORDERED** that Defendant's Motion for Attorneys' Fees Pursuant to C.R.S. § 13-17-201 [Docket No. 91] is **GRANTED** in part and **DENIED** in part as indicated in this Order. Plaintiff James L. Nero shall pay attorneys' fees in the amount of $48,563.50 to defendant American Family Mutual Insurance Company.

---

[5]This total includes Mr. McCarthy's reduced hourly rate of is $500.00. and the deduction of 1.8 hours of duplicative billing entries.

DATED September 23, 2013.

BY THE COURT:


  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge